IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-02376-MSK-KLM

RALPH GAMBINA,

     Plaintiff,

v.

FEDERAL BUREAU OF PRISONS, sued in its official capacity;

     Defendant.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Plaintiff's **oral Motion to Compel Response to Request for Production No. 2** (the "Motion").  The Court held a hearing regarding the Motion on April 17, 2012.  Plaintiff submitted a brief in support of the Motion on April 24, 2012 [Docket No. 90].  Defendant submitted a brief in opposition to the Motion on April 24, 2012 [Docket No. 89].  For the reasons set forth below, the Motion is **GRANTED.**

## I. Background

     Plaintiff Ralph Gambina ("Plaintiff" or "Mr. Gambina") is incarcerated at the United States Penitentiary Administrative Maximum  ("ADX") in Florence, Colorado.  He alleges that he has remained in "solitary confinement" for more than eighteen years, and that Defendant has "continuously and systematically deprived [him] of his basic human needs including social contact and environmental and sensory stimulation, in an arbitrary and capricious manner, with no legitimate penological justification." *Complaint* [#1] at 2.  As a

result of the District Judge's ruling on a partially dispositive motion, Plaintiff has two remaining claims which seek declaratory and injunctive relief against the Defendant Bureau of Prisons ("BOP") for alleged deprivation of his Fifth Amendment liberty interest in procedural due process and violation of his Eighth Amendment right to be free from cruel and unusual punishment.  *Order* [#48] at 24-25.[1]

The conditions of confinement at ADX are a frequent subject of prisoner litigation. As explained by the Tenth Circuit Court of Appeals:

> ADX is the most restrictive and secure prison operated by the BOP.  As the only facility of its kind in the federal system, it is reserved for inmates who require 'the highest custody level that can be assigned to an inmate.' Prisoners housed in the general population unit at ADX spend twenty-three hours a day confined to their cells.  The typical cell at ADX measures eighty-seven square feet and contains a bed, desk, sink, toilet and shower.  Inmates take their meals alone in their cells.  Although BOP policy provides for ten hours of recreation per week, recreation is frequently cancelled due to staff shortages, mass shakedowns, or adverse weather.

*Rezaq v. Nalley*, 677 F.3d 1001, 1005 (10th Cir. 2012).

As to his own circumstances of confinement at ADX, Mr. Gambina alleges that he

> receives a total of five hours per week of solitary exercise in a small, enclosed outdoor area.  He has a small television set in his cell through which he can access educational or religious programming.  He is routinely strip-searched each time he enters or leaves his cell, whether for exercise, visitations, or any other reason.  He is provided two social telephone calls per month and five non-contact visits with visitors.  He has no contact with other inmates and limited contact with ADX staff.

---

[1]  The District Judge's Order on the Motion for Judgment on the Pleadings was entered on September 28, 2011. [#48]  On April 20, 2012, the Court of Appeals for the Tenth Circuit issued a decision in *Rezaq v. Nalley*, 677 F.3d 1001.  In *Rezaq*, the Tenth Circuit held that "the conditions at ADX . . . do not, in and of themselves, give rise to a liberty interest because they are substantially similar to conditions experienced in any solitary confinement setting . . . .  We conclude that the conditions in the general population unit at ADX are not extreme as a matter of law."  The Tenth Circuit further concluded that the ADX inmates who brought suit in *Rezaq* "did not have a liberty interest in avoiding confinement at ADX."  677 F.3d at 1016.  The parties have not addressed the effect of the *Rezaq* decision on Plaintiff's claims in this case.

Order [#48] at 2-3.

Mr. Gambina has been a federal prisoner almost continuously since 1974.  He alleges that he was transferred to ADX from the "Control Unit" at USP-Marion on April 12, 1995.  *Complaint* [#1] ¶ 31.  The parties do not dispute that Mr. Gambina did not receive a hearing to address his transfer to ADX before he was moved there.

In late 2007, BOP Regional Director Michael Nalley issued revised procedures for wardens to follow before transferring  inmates to ADX.  The procedures were explained in a document which the parties refer to as the "Nalley Memorandum."  In accordance with the Nalley Memorandum, the BOP conducted retroactive hearings for those inmates who were transferred to ADX prior to 2008, including Mr. Gambina.  "The procedures provided that the inmate being referred should receive notice of the transfer hearing, an opportunity to participate in the hearing, a written recommendation by the hearing officer, and administrative review of the regional director's decision by the BOP's general counsel." *Rezaq, supra,* at 1006.

On August 17, 2010, a BOP hearing officer conducted a retroactive due process hearing to determine whether Plaintiff met the criteria for placement in the ADX general population.  *Declaration of Charles E. Samuels, Jr.,* ¶ *3*, attached as Exh. B; *Deposition of Eleanor Alexander*, p. 17, ll. 16-21, attached as Exh. C.  The hearing was conducted pursuant to the procedures set forth in the Nalley Memorandum.  Exh. C at pp. 36-37, ll. 25-3.  The hearing officer received written information from ADX known as a "referral packet,"  which she reviewed in advance to prepare for the hearing.  *Id.* at p. 42, ll. 11-23. The referral packet "include[d] all materials provided to the Hearing Administrator, or any other [BOP] personnel, in advance of the plaintiff's ADX placement hearing for the purpose

3

of preparing for or conducting the hearing." *Exh. B* ¶ 3.  According to the hearing officer, the referral packet pertaining to Mr. Gambina contained "information that describes the inmate's misconduct while he has been incarcerated and/or any criminal actions." *Exh. C* at p. 43, ll. 17-22.  The hearing officer "highlighted particular information from the referral packet in order to prepare for the hearing and to finalize the ADX Hearing Report." *Exh. B* ¶ 7.[2]

Plaintiff's Request for Production of Documents No. 2 ("RFP #2") seeks "any and all prison records for Mr. Gambina. . . ."  As a result of counsels' efforts to confer about their dispute over RFP #2, the scope of the dispute has been narrowed to the referral packet relating to Plaintiff's hearing.  *Letter from David L. Glandorf to Juan Villaseñor dated January 20, 2012 and Letter from Juan Villaseñor to David L. Glandorf dated January 26, 2012,* attached as *Exh. D.*  Defendant describes the disputed documents in its privilege log as a six-page "BOP document containing information about Inmate Gambina (with highlights)," a ten-page "SENTRY printout containing information about Inmate Gambina (with highlights)" and a two-page "SENTRY printout containing information about Inmate Gambina (with highlights)."[3]  *Privilege Log dated April 29, 2011,* attached as *Exh. E.*  Defendant submitted the referral packet for an *in camera* inspection by the Court on August 29, 2012. [#112]

---

[2] In the Order on Defendant's Motion for Judgment on the Pleadings, the Court held that Mr. Gambina "may timely challenge the procedural sufficiency of the July 2010 'retroactive' ADX assignment hearing. . .[but] his challenge to the 1995 decision to transfer him to ADX is untimely." [# 48] at 10.  The BOP does not contest the relevance of the referral packet to Plaintiff's claim regarding denial of his Fifth Amendment due process rights.

[3] SENTRY is apparently a computer software program used by BOP personnel to maintain information regarding inmates, including their housing assignments and chronological disciplinary record. *Exh. C* at p. 44, ll. 2-9.

## II. Analysis

Defendant contends that discovery of the referral packet is precluded by the deliberative process privilege.  Plaintiff contends that the deliberative process privilege is inapplicable to the referral packet.  The Court agrees with Plaintiff.

The deliberative process privilege is a form of executive privilege that allows the government to withhold documents which reveal "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).  "Two requirements are essential to the deliberative process privilege: the material must be predecisional and it must be deliberative."  *Id.*  The privilege does not protect material that is "purely factual, unless the material is so intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations."  *Id.*

The government has the burden of proving the applicability of the deliberative process privilege, which is "a qualified privilege and can be overcome by a sufficient showing of need."  *Id.* at 738.  If the government succeeds in carrying its burden of showing that the material qualifies as predecisional and deliberative, the court must decide whether the privilege is overcome by the requesting party's showing of need.  *Id.*  Factors to be considered in balancing the interests between the government and the need of the party seeking disclosure of the material include its relevance, the availability of other evidence, the seriousness of the litigation, the role of the government, and the possibility of future timidity by government employees.  *Id.*; *see also Fourhorn v. City & Cnty. of Denver,* No. 08-cv-01693, 2009 WL 2407569 at *4 (D. Colo. Aug. 3, 2009).

The parties do not dispute that the referral packet is "predecisional," in that it was

"prepared in order to assist an agency decision maker in arriving at [her] decision, rather than to support a decision already made." *Petroleum Information Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)). However, Mr. Gambina argues that the referral packet is not deliberative, because it consists of factual material which does not qualify for protection merely as a result of being "conveyed [to the hearing officer] during the deliberative process." *Plaintiff's Brief* [#90] at 4. Indeed, careful jurists have drawn the line between information conveyed during the deliberative process which is entitled to protection, and information conveyed during the deliberative process which is not.

> It is not enough to show that the information was conveyed during the deliberative process; instead, the statement or document must have been 'a direct part of the deliberative process *in that it makes recommendations or expresses opinions on legal or policy matters*. Put another way, pre-decisional materials are not exempt merely because they are predecisional; they must also be a part of the agency give-and-take of the deliberative process by which the decision itself is made.'

*Cobell v. Norton*, 213 F.R.D. 1, 5 (D. D.C. 2003)(emphasis added).

After a careful reading of the twenty-page referral packet, I find that it contains five sentences on five different pages that might be construed as policy statements or opinions on *factual* matters. Two sentences contain justifications for past decisions regarding Mr. Gambina's prison assignments which might be construed as BOP "policy statements," but which are not identified as such, and which instead are included as part of a chronological narrative regarding Mr. Gambina's incarceration in the federal prison system. Three short sentences express opinions about Mr. Gambina's adjustment to incarceration. Certain facts contained in the referral packet are highlighted, presumably by the hearing officer.

The referral packet contains no handwritten or other notations of any kind.

In short, the referral packet is overwhelmingly factual in nature.  It simply does not "make recommendations or express opinions on legal or policy matters."  Rather, it compiles factual data regarding Plaintiff and his behavior during his extensive period of incarceration.  The sentences which could be construed as expressing "policy" or "opinions" are so predominantly factual that redaction is unnecessary. This is not a situation where the factual and deliberative content of a disputed document is inextricably intertwined.  It is more like a bucket of water that contains a drop or two of ink.  The presence of the ink in the water is virtually undetectable, like the presence of "recommendations," "opinions" or "deliberations" is virtually undetectable here.  As a result, I conclude that the content of the referral packet is factual, not deliberative.

Although the substantive content of the referral packet is not properly protected by the deliberative process privilege, does the fact that the hearing officer highlighted certain information in the packet transform it?  I find that it does not. The mere presence of highlighting by the hearing officer does not change the fundamental, overwhelmingly factual nature of the documents.  Courts have long recognized that factual information is not protected (*see, e.g., Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 88 (1973)), and despite the possibility that the hearing officer's highlighting may *somehow relate to* her thought processes, the deliberative process privilege is not that broad.  It simply protects against disclosure of government decision-makers' thought processes during decision-making. As an experienced highlighter, I can say that the value of such marks in revealing thought processes (the essence, after all, of "deliberation") is marginal at best.  Although the highlighting may demonstrate which facts were of particular note to the hearing officer, it

does not turn those facts into information about her thought processes in reaching her decision any more than putting two drops of ink into a bucket of water changes the liquid into a bucket of ink.

At the end of the analysis, the referral packet is overwhelmingly factual material which, despite its purpose of conveying information during the deliberative process, reveals nothing of substance about recommendations, policies or deliberations which may ultimately have influenced the decision made.   Therefore, the referral packet is not protected by the deliberative process privilege.

Accordingly, the Motion is **GRANTED.**  The Clerk shall change the restriction level of the documents submitted at Docket No. 111 to **Level 1** pursuant to D.C.COLO.LCivR 7.2B.5.

Dated:  September 12, 2012

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge