**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

**Civil Action No. 10-cv-02376-MSK-KLM**

**RALPH GAMBINA,**

        Plaintiff,

**v.**

**FEDERAL BUREAU OF PRISONS, sued in its official capacity;**

        Defendant.

---

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court on a Motion for Summary Judgment **(#93)** by the Defendant, Federal Bureau of Prisons (BOP).[1] The Plaintiff, Ralph Gambina, filed his Response **(#127)**, and the BOP filed a Reply **(#132)**.[2]

**I. Jurisdiction**

The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1] Also pending before the Court are (1) Defendant's Motion to Restrict Access to Exhibit M in Support of the Motion for Summary Judgment **(#94)**, (2) Defendant's Motion to Restrict Access to an Unredacted Version of the Reply and Exhibit R Filed in Support of the Motion for Summary Judgment **(#134)**, and (3) the Plaintiff's Rule 72(a) Objections to Magistrate Judge Mix's March 12, 2012 Minute Order **(#77)**. These motions will be addressed at the end of this Opinion.

[2] Mr. Gambina also filed a surreply **(#137)** to the BOP's reply, without seeking or obtaining leave of the Court to do so. Although surreplies are not permitted without leave of the Court, in deference to Mr. Gambina's *pro se* status, and the fact that the Court finds his arguments unavailing in any event, the Court has considered the contents of his surreply.

## II. Issues Presented

Mr. Gambina, a prisoner, has two viable claims remaining in this action: (1) a claim for denial of procedural Due Process under the Fifth Amendment, and (2) a claim of cruel and unusual punishment under the Eighth Amendment. Both claims relate to Mr. Gambina's confinement in the BOP's Administrative Maximum (ADX) facility in Florence, Colorado. The BOP moves for summary judgment on each claim, arguing that Mr. Gambina cannot produce sufficient evidence to establish his claims.

## III. Summary Judgment Standard

Although Rule 56 of the Federal Rules of Civil Procedure was recently restyled, its purpose remains the same — to provide for a summary determination when no trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Accordingly, Rule 56(a) directs entry of a judgment on a claim or defense, or part thereof, when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.

Substantive law governs which facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" if the evidence presented in support of and in opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c). Once the moving party has met its burden, to establish a genuine dispute that requires a trial, the responding party must present competent and contradictory evidence as to a material fact. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).

When the moving party does not have the burden of proof on the pertinent issue, it may point to an absence of sufficient evidence to establish a claim or defense that the non-movant is obligated to prove. Once the movant has done so, the respondent must come forward with sufficient competent evidence to establish a *prima facie* claim or defense to justify a trial. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then judgment in favor of the movant must be entered as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### IV. Material Facts

The Court will summarize the pertinent facts here, and elaborate in more detail as necessary in its analysis. In both contexts, the Court construes the evidence most favorably to Mr. Gambina.[3]

---

[3] The Court is mindful that Mr. Gambina is proceeding *pro se* and therefore construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Such liberal construction, however, is intended merely to overlook technical formatting errors and other defects in his use of terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve Mr. Gambina of the duty to comply with the various rules and procedures governing litigants and counsel, or the requirements of the substantive law. In these regards, the Court treats Mr. Gambina according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994). Further, the Court observes that Mr. Gambina did not submit a responsive affidavit, nor did he declare, under penalty of perjury, that the contents of his filings are true and correct. However, the Court assumes that if called upon to do so, Mr. Gambina would make such declaration. Thus, the Court treats Mr. Gambina's factual statements

Mr. Gambina has been in the continuous custody of the BOP since 1989. In 1992, he was charged with attempted escape from the facility where he was housed. Although he was acquitted of criminal charges, a BOP Hearing Officer found sufficient evidence to establish the attempted escape. As a penalty for breaking prison rules, he was assigned to a Control Unit at such facility for 60 months. Mr. Gambina then was transferred to ADX to complete his 60-month placement in the Control Unit.[4] After completing his sentence to the Control Unit, Mr. Gambina continued to be confined in ADX. In July 2003, he was released to a general population unit in ADX, where he is currently serving a life sentence.

## IV. Analysis

### A. Procedural Due Process

Mr. Gambina asserts that he was denied sufficient process as related to the BOP's decision to confine him in ADX beyond the term of his assignment to the Control Unit. The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. To succeed on his claim for denial of procedural Due Process, Mr. Gambina has the burden of establishing two elements: (1) that he has been deprived of a constitutionally-protected liberty or property interest, and (2) that the procedures followed by the BOP in depriving him of that interest were constitutionally insufficient. *See Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011). The BOP argues that Mr. Gambina cannot produce sufficient evidence to establish either element.

As to the first element, Mr. Gambina asserts no constitutionally protected property interest. Instead he asserts that he has a protected liberty interest in avoiding confinement in

---

for which he has personal knowledge as if they had been attested to under penalty of perjury. *See* 28 U.S.C. § 1746.

[4] Although not specified in the record, the Court presumes that the "Control Unit" is a confinement area that is more restrictive than the ADX General Population units.

4

ADX. In the penological context, not every deprivation of liberty at the hands of prison officials has conditional dimension because incarcerated persons retain only a "narrow range of protected liberty interests." *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012) (quoting *Abbott v. McCotter*, 13 F.3d 1439, 1442 (10th Cir. 1994)). The Supreme Court has recognized that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Rather, a protected liberty interest arises from a placement in harsher conditions only when an inmate faces an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Wilkinson*, 545 U.S. at 223.

In determining whether Mr. Gambina has a protectable liberty interest, the Court must determine whether Mr. Gambina's continuing assignment to ADX imposes "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." In this endeavor, the Court is guided by the reasoning of the Tenth Circuit in *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012). There, the Tenth Circuit identified four potentially relevant, but nondispositive, factors. The factors include whether (1) the placement relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement; and (4) the placement is indeterminate. *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1342 (10th Cir. 2007). However, while these factors are useful to guide the liberty interest analysis, they do not serve as a constitutional touchstone. *Rezaq*, 677 F.3d at 1012. "[T]he proper approach is a fact-driven assessment that accounts for the totality of conditions presented by a given inmate's sentence and confinement." *Id.*

With these considerations in mind, and viewing the undisputed evidence on the record in the light most favorable to Mr. Gambina, the Court turns to the question of whether Mr. Gambina has a protected liberty interest in avoiding confinement in ADX.

1. *The BOP's Penological Interest*

The BOP's penological interest in confining Mr. Gambina in ADX is relevant in determining whether a liberty interest exists. *See id.* at 1013. It is sufficient, however, for the BOP to show that there is a reasonable relationship between confinement in ADX and its asserted penological interests. *See id.* at 1014.

Although Mr. Gambina did not receive a hearing before being transferred to ADX, in 2010, the BOP granted him a hearing to retroactively address whether his placement at ADX was warranted. After the hearing, the BOP determined that Mr. Gambina's history of criminal and institutional conduct created a risk to institution security and the safety of staff, inmates, himself, and the public, such that he cannot be safely housed in the general population of a regular correctional institution.[5]

The record supports the BOP's determination. Mr. Gambina's criminal history goes back to the 1970s, including convictions of three attempted escapes, assault with a dangerous weapon, kidnapping, and bank robbery with use of a hostage. During his years in prison, Mr. Gambina has committed numerous disciplinary infractions, including, among other things, making sexual proposals and threats to female staff, disruptive conduct, assault, destruction of government property, and setting a fire. Further, the record shows that Mr. Gambina presented evidence at

---

[5] Mr. Gambina asserts that the BOP's decision to confine him at ADX rests solely on the 1992 charges of attempted escape, for which he was acquitted. The record belies this assertion. The BOP's hearing report indicates that it considered Mr. Gambina's entire criminal and institutional record and concluded that his confinement at ADX was warranted.

the hearing to establish that he is the target of certain prison gangs. The BOP considered the evidence and found that it weighed in favor of keeping Mr. Gambina in ADX for his own safety.

Mr. Gambina does not dispute the BOP's factual assertions. Instead, he argues that the BOP's decision to keep him in ADX is unwarranted for several reasons, including that many of his convictions are over twenty years old, the convictions are not for homicide or terrorism, and he is not part of a prison gang.

Essentially, Mr. Gambina asks the Court to substitute its judgment for that of prison officials on the question of his placement. The Court declines to do so. It is well settled that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." *Sandin v. Conner*, 515 U.S. 472, 482 (1995); *DiMarco*, 473 F.3d at 1342 (the court must be "mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts"). In light of Mr. Gambina's history of violent crimes, attempted escapes, and institutional misconduct, the Court finds that there is a reasonable relationship between confining Mr. Gambina in ADX and the BOP's asserted penological interests of institutional security and safety. Thus, this factor does not weigh in favor of finding a protected liberty interest.

   *2. Conditions of Confinement*

In *Rezaq*, the Tenth Circuit discussed the conditions of confinement that exist in the general population at ADX. The panel recognized that the conditions are undeniably harsh, but it found that the conditions, in and of themselves, do not give rise to a liberty interest because they are "comparable to those routinely imposed in the administrative segregation setting." *Rezaq*, 677 F.3d at 1014-15. The panel therefore concluded "that the conditions in the general population unit at ADX are not extreme as a matter of law."

Mr. Gambina is currently housed in ADX General Population Unit D. The record shows that the conditions of Mr. Gambina's confinement are virtually identical to those discussed in *Rezaq*. Mr. Gambina does not dispute the evidence, nor does he present any evidence to show that his conditions of confinement are materially different from those in *Rezaq*. He argues, however, that he is denied meaningful exercise because recreation occurs in a "solitary cage with nothing to do." The assertion is belied by the record. Mr. Gambina admits that he participates in recreation "all the time," that he is in excellent physical shape, and that he turns his cell into a gymnasium where, every day, he does various physical exercises, jogs, and practices martial arts. Accordingly, the Court finds that the undisputed evidence of the conditions of Mr. Gambina's confinement do not weigh in favor of finding a protected liberty interest.

*3. Duration of Confinement*

Mr. Gambina does not dispute that the BOP's decision to confine him at ADX does not extend the length of his sentence or affect his parole eligibility, if applicable. Thus, this factor does not weigh in his favor.

*4. Indefiniteness of Confinement*

The duration and indeterminacy of a placement in extreme conditions are often critical considerations in the liberty interest analysis. *Id.* at 1016 (citing *Wilkinson*, 545 U.S. at 224). However, while duration of confinement is an important consideration, it must be considered in tandem with indeterminacy. *Id.*

Here, the record shows that there is a periodic review process at ADX, which provides inmates an opportunity to be present and participate in meetings with a Unit Team. (A Unit Team consists of two case managers, two correctional officers, a unit secretary, and the unit manager.) At reviews, inmates are permitted to discuss issues and concerns in an open format.

Often, inmates ask questions and discuss concerns about their ADX placement and their eligibility for the Step-Down Program.[6] The evidence shows that, since 2004, Mr. Gambina has had 17 such reviews, as well as additional progress reports and a hearing to address whether his placement in ADX is warranted. Mr. Gambina has participated in many of the reviews. At the hearing on his placement, Mr. Gambina asked many questions and presented evidence. The availability of these periodic reviews and the Step-Down Program suggest that Mr. Gambina's confinement in ADX is not indefinite. *See, e.g., Rezaq*, 677 F.3d at 1016.

Mr. Gambina does not dispute that he receives periodic reviews. He also admits that he was told that if he completes the Step-Down Program, he could be eligible for transfer from ADX. He argues, however, that his confinement at ADX is indefinite because, even if eligible, he cannot safely enter the Step-Down Program. This is so, he argues, because he is the target of certain prison gangs, and members of those gangs are present in each housing unit that is part of the Step-Down Program.

Mr. Gambina's assertion is speculative and belied by the record. First, the evidence shows that, at this time, Mr. Gambina has not met the criteria to become eligible for the Step-Down Program. More importantly, however, he has made no showing that he intends to become eligible at any time in the future. Second, assuming that Mr. Gambina does become eligible for the program, the BOP asserts that it is aware of his safety concerns and capable of measures to

---

[6] If an inmate at ADX demonstrates a period of clear conduct and positive institution adjustment, they may be placed in the Step-Down Program, which is a three-year program where an inmate transitions through less-restrictive confinement and may eventually be transferred from ADX. Per ADX policy, an inmate is eligible for placement in the program if they (1) achieve a minimum of 12 months clear conduct, (2) participate and complete all programs recommended by the Unit Team, (3) exhibit positive behavior, including respectful conduct toward staff and inmates, and (4) exhibit positive overall institutional adjustment, including personal hygiene and cell sanitation. If an inmate becomes eligible for the Step-Down program, they are referred to a committee for consideration.

ensure his safety. The record shows that the BOP has identified Mr. Gambina's case as one that requires heightened levels of review as to his security and safety. It also shows that Mr. Gambina has been separated from "two disruptive groups." The BOP asserts that if Mr. Gambina were placed in the Step-Down Program, it would keep him separate from those groups by staggering his progress and progression through the program.

Taken together, the above four factors and the undisputed evidence do not weigh in favor of finding that Mr. Gambina's confinement at ADX deprives him of a protected liberty interest. Because Mr. Gambina has not come forward with sufficient evidence to establish that he was deprived a protected liberty interest, it is unnecessary for the Court to address whether he was afforded adequate procedural protections. Accordingly, the Court finds that Mr. Gambina has failed to present sufficient evidence to support a prima facie claim. Accordingly, judgment in favor of the BOP must be entered as a matter of law.

### B. Cruel and Unusual Punishment

Mr. Gambina's second claim is that the conditions of confinement in ADX amount to cruel and unusual punishment, as prohibited by the Eighth Amendment. To succeed on his conditions of confinement claim under the Eighth Amendment, Mr. Gambina must establish two elements: (1) the conditions of confinement pose a substantial risk of serious harm (the objective component); and (2) prison officials had a "sufficiently culpable state of mind" in denying him health or safety (the subjective component). *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The BOP argues that Mr. Gambina cannot produce sufficient evidence to establish either element of the claim.

As to the objective component, Mr. Gambina asserts that the "totality of the conditions" of his confinement amount to cruel and unusual punishment. The Eighth Amendment's

10

prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm. *Farmer*, 511 U.S. at 832. However, the Eighth Amendment "does not mandate comfortable prisons." *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998). The Tenth Circuit has recognized that it is important to consider the conditions of confinement as a whole, but that the "overall conditions" cannot rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. *See Ajaj v. U.S.*, 293 Fed. Appx. 575, 583 (10th Cir. 2008) (unpublished).

Here, Mr. Gambina does not allege that he has been denied such basic human needs as food, clothing, and shelter. Instead, he complains that a lack of "meaningful physical exercise" and a deprivation of "social contact" and "environmental and sensory stimulation," for a period of many years, pose a substantial risk of serious harm.

Assuming that meaningful physical exercise, social contact, and environmental and sensory stimulation are "human need[s]," the record belies his assertions that he has been denied these needs. As noted in the discussion above, Mr. Gambina admits that he participates in recreation "all the time," that he is in excellent physical shape, and that he turns his cell into a gymnasium. The record also shows that Mr. Gambina is given opportunities for phone calls and social visits, but he does not avail himself of these opportunities by his own choosing. He admits that he could to talk to other inmates and staff members, but he refuses to do so because he does not "really have anything to say to them." He also admits that he does not communicate with most of his family members because he has nothing to tell them. He does, however, receive mail from his brother and, sometimes, his mother. Mr. Gambina's brother often sends him books and

11

magazines, which Mr. Gambina admits he "really enjoyed." He also admits that he watches television programs such as *Frontline*, *News Hour*, and *Washington Week in Review*.

In light of the undisputed evidence, the Court finds that the conditions that Mr. Gambina avers, even taken together, do not rise to the level of substantial risk of serious harm. *See also, Ajaj*, 293 Fed. Appx. at 583 (findings conditions of confinement at ADX do not rise to the level of cruel and unusual punishment). Further, the Court finds that although Mr. Gambina is currently serving a life sentence at ADX, the record shows that the Step-Down Program is available to him, should he become eligible. Thus, on its own, the duration of Mr. Gambina's exposure to the conditions at ADX does not, by itself, pose a substantial risk of serious harm.

Accordingly, the Court finds that Mr. Gambina has failed to present sufficient evidence to establish the objective component of his claim. It is therefore unnecessary for the Court to address the subjective component. Accordingly, the Court finds that there is no genuine dispute of material fact as to Mr. Gambina's claim of cruel and unusual punishment under the Eighth Amendment and concludes that judgment in favor of the BOP must be entered as a matter of law.

### V. Remaining Motions

Also pending before the Court are two unopposed motions by the BOP to Restrict Access **(#94, 134)** to (1) Exhibit M, in support of the BOP's motion for summary judgment; (2) Exhibit R, also in support of the BOP's motion for summary judgment; and (3) a redacted version of the BOP's Reply in support of its motion for summary judgment. Under Local Rule 7.2, documents filed with the court will not be restricted unless the interest to be protected outweighs the presumption of public access. D.C.COLO.LCivR 7.2. The BOP asserts that the information contained in the restricted documents contains law enforcement sensitive information that bears

on the BOP's management and operation of its institutions. It asserts that if the information were public knowledge, it would create a risk to Mr. Gambina, institution security, and public safety.

Having reviewed the identified documents, the Court finds that only Exhibit R contains information that warrants restriction. Much of the information contained in Exhibit M and the redacted Reply is revealed in other parts of the record or is relied on by the Court in its analysis. The Court finds that any remaining information in those documents, if in the public domain, would not pose a risk to Mr. Gambina, institution security, or public safety. Exhibit R, on the other hand, contains some details about how inmates are coded and classified at ADX, which are not relevant to the Court's decision and are arguably a sensitive matter of BOP operations. The Court therefore finds that the interests asserted by the BOP outweigh the presumption of public access only as to Exhibit R.

Finally, Mr. Gambina has filed Objections to Magistrate Judge Mix's March 12, 2012 Minute Order **(#79)**. (The Objections are filed under restriction at Docket #77.) Mr. Gambina complains that the Magistrate Judge improperly denied him discovery of specific information about other inmates who have been confined at ADX for over 10 years, and about the activity of two prison gangs at ADX. In accordance with Fed. R. Civ. P. 72(a), the Court has reviewed the Magistrate Judge's minute order and related transcript **(#75, 80)** and finds that the ruling is not clearly erroneous or contrary to law. Mr. Gambina's objections are therefore overruled, and the ruling is affirmed.

## VI. Conclusion

For the forgoing reasons, the Court rules as follows:

- Defendant's Motion for Summary Judgment **(#93)** is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendant on all remaining claims.

- The Defendant's Unopposed Motion to Restrict Access to Exhibit M in Support of the Motion for Summary Judgment **(#94)** is **DENIED**. The Clerk of the Court is directed to lift all restrictions on Docket #95.

- The Defendant's Motion to Restrict Access to an Unredacted Version of the Reply and Exhibit R Filed in Support of the Motion for Summary Judgment **(#134)** is **GRANTED IN PART AND DENIED IN PART**. The Clerk of the Court is directed to lift all restrictions on Docket #135 and to maintain a Level 2 restriction on Docket #136.

- The Plaintiff's Rule 72(a) Objections to Magistrate Judge Mix's March 12, 2012 Minute Order **(#79)** are **OVERRULED**.

Dated this 4th day of March, 2013.

                **BY THE COURT:**

                */s/ Marcia S. Krieger*

                Marcia S. Krieger
                Chief United States District Judge